IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2025 Session

**STATE OF TENNESSEE v. JUSTIN RIVERS**

**Appeal from the Circuit Court for Fayette County**
**No. 23-CR-136       J. Weber McCraw, Judge**

_____

**No. W2024-00958-CCA-R3-CD**
_____

The Defendant, Justin Rivers, was convicted of aggravated child neglect and received a sentence of fifteen years in confinement. On appeal, the Defendant argues: (1) his motion for judgment of acquittal should be treated as a prematurely filed motion for new trial; (2) the evidence is insufficient to support his conviction; and (3) the aggravated child neglect statute is unconstitutionally vague. After review, we dismiss the appeal due to its untimeliness.

**Tenn R. App. P. 3 Appeal as of Right; Appeal Dismissed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which KYLE A. HIXSON and STEVEN W. SWORD, JJ., joined.

Jessica F. Butler, Assistant Public Defender–Appellate Division (on appeal); Bo Burk, District Public Defender; and Terry Dycus, Assistant District Public Defender (at trial), for the appellant, Justin Rivers.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Mark Davidson, District Attorney General; and Falen Chandler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 13, 2023, the Fayette County Grand Jury indicted the Defendant, Justin Rivers, on the following offenses: aggravated child neglect, simple possession of marijuana (Schedule VI), simple possession of cocaine (Schedule II), and simple possession of

fentanyl (Schedule II). Prior to trial, the Defendant pled guilty to the three drug possession charges. The case proceeded to trial solely on the charge of aggravated child neglect. Following a one-day trial, the Defendant was convicted of aggravated child neglect, a Class A felony.

At trial, Kendra York testified that on January 10, 2023, she left her friend's one-year-old child, K.A., in the care of the Defendant at their residential home in Fayette County. York identified the Defendant in court. York testified that although the Defendant's grandmother, Eva Harris, was also present in the home at the time, Harris had medical issues and was not responsible for supervising K.A. York further acknowledged that she had pled guilty to child abuse and neglect based upon leaving K.A. with the Defendant on January 10, 2023.

James Gist, the Defendant's neighbor, testified that the Defendant, who was holding K.A. in his arms, walked to Gist's yard on the afternoon of January 10, 2023, and asked Gist to call 911. Gist stated that the child appeared to be sleeping and that he did call 911.

Lieutenant Donnie McMahon of the Fayette County Sheriff's Office responded to the Defendant's residence on January 10, 2023. He testified that the Defendant told him that he had "taken some cocaine" and "fallen asleep" and that when he woke up K.A. "was laying [sic] next to him unresponsive," and he thought K.A. had taken some cocaine as well.

Alicia Holt, a paramedic with the Fayette County Ambulance Service, testified that she responded to the 911 call and arrived at the Defendant's residence on January 10, 2023. She identified K.A. as the child she treated. She observed a man carrying K.A. from the home. She said K.A. appeared unresponsive and was placed in the ambulance, where emergency personnel began providing care. Holt stated that K.A. was "not acting like a one-year-old," had an elevated heart rate and blood pressure, and had a low respiratory rate and oxygen level. K.A. only responded to "vigorous stimulation." Narcan was administered intravenously, and K.A. began to show improvement during transport to LeBonheur Children's Hospital, which Holt testified was indicative of an opioid overdose.

On cross-examination, Holt acknowledged that by the time they arrived at the hospital, the child was not exhibiting visible adverse effects. She testified that LeBonheur's drug screen revealed the presence of cocaine in K.A.'s system, but she was not informed of any test results indicating the presence of opioids. Holt stated that Narcan only works for opioids, such as fentanyl, but not cocaine. Because K.A.'s condition improved after receiving the dose of Narcan, Holt believed that K.A. had probably ingested an opioid in addition to cocaine. K.A.'s urine test was positive for cocaine. She was not

tested for fentanyl, a synthetic opioid. On redirect, Holt said she did not believe LeBonheur tested for fentanyl.

Glen Miller, Director of the Fayette County Ambulance Service, also responded to the scene. He testified that K.A. "appeared to be unconscious," with flaccid muscle tone, bobbing limbs, and an overall unresponsive condition. He described the use of the "FLACC" scale, which evaluates facial expression, leg activity, activity, crying, and consolability to assess pain in non-verbal children. According to Miller, K.A.'s FLACC score was six, indicating moderate pain. He also observed symptoms of dehydration and low respiratory rate, both of which he characterized as adverse effects for a one-year-old child.

Miller agreed that K.A. responded positively to Narcan and that, in his opinion, her symptoms were consistent with an overdose. He testified that had emergency services not been contacted in time, K.A.'s respiratory rate could have continued to decrease, which could have led to respiratory failure. Miller confirmed that LeBonheur's toxicology screen was positive for cocaine and that the hospital did not test for fentanyl at the time.

On cross-examination, Miller acknowledged that LeBonheur's hospital records stated there was "no thoughtful neurological deficit" and that by the time of arrival, K.A. had reactive pupils, normal corneal vascular rhythm, and clear lungs. He agreed that the records also listed the ingestion as "accidental" and noted no prior risk factors or self-injurious behavior.

On redirect, Miller confirmed that K.A.'s vitals were taken prior to the Narcan being administered and that K.A.'s blood pressure was high prior to the administration of the Narcan. Miller said the hospital triage notes stated, "Patient at home with adult; adult reports cocaine use; adult passed out and woke up and noted patient lethargic; EMS called; patient flaccid, unresponsive upon arrival; one milligram Narcan IV at 1450, positive response." The triage notes also included the following information:

> [T]his is a 12-month-old female with no significant past medical history presents with possible ingestion of cocaine. Per EMS the patient was with a caregiver when they noticed that the patient was "lethargic". Per EMS the patient's caregiver had taken an uncertain amount of cocaine and fell asleep. When he woke up the caregiver noticed that the patient was near the cocaine. The caregiver believes that the patient was found to have taken some cocaine. ROS negative for fever, vomiting, diarrhea, cyanosis or other symptoms at this time. The substance ingested was cocaine. The onset was just prior to arrival. Amount ingested: substance cocaine. The location where the incident occurred was at home. The reason for ingestion was accidental. Risk factors

consist of none. Prior episodes: none. Therapy today: none. Associated symptoms: none and increased sleepiness. Additional self injury: none.

Miller agreed that he had never known a one-year-old child to intentionally overdose, and the inclusion of the word "accidental" in the hospital record did not surprise him.

On recross-examination, the following exchange between Defense Counsel and Miller took place:

> Q. I'm confused and maybe it's just doing this job I've heard stuff and I want you—you, with your experience, just to clear me up. Cocaine really doesn't make you sleepy, does it?
> A. It does not.
> Q. How do you explain that in this case?
> A. I know there's no record of it, but it's obvious to a caregiver, and to me when I got there, the child had had something other than cocaine. In today's society, people are cutting drugs with any and everything, so it was -- you know, you don't give Narcan for cocaine ingestion.
> Q. Right.
> A. So, we, the caregiver and I both thought that somehow, someway, this child had ingested a narcotic so we gave the Narcan.
> Q. Caregiver being Mr. Rivers?
> A. Whoever. I have no idea.
> Q. Okay. I just thought that was unusual, especially -- Would it surprise you to know that -- I guess we've already covered this -- there were no – we've already covered it, there were no opiates detected in the child's system. Maybe it was an undetectable amount.
> A. Well, there was no -- there was no opiates found but a test was not given for fentanyl that I know of.
> Q. Fentanyl is an opiate.
> A. A synthetic opiate that would not show up on the test on the urinalysis they did on the child. Fentanyl would not show at that time.

Miller agreed that the half-life of fentanyl is approximately four to seven hours, depending on the method of ingestion. He confirmed that EMS responded promptly after the caregiver called 911 and that the child was stabilized prior to transport. Miller estimated that EMS was on scene for approximately twenty to thirty minutes before transport. Miller further acknowledged that LeBonheur Children's Hospital typically

recommends follow-up with a primary care provider for all pediatric patients; however, he denied knowing whether K.A. received any such follow-up care.

Daniel Rancer, a narcotics investigator with the Fayette County Sheriff's Department, testified that he executed a search warrant at the Defendant's residence on January 10, 2023. He identified photographs he took of the interior of the home, which were admitted into evidence. He testified that cigarette ashes and torn cigarette packaging were found on the coffee table. He said that based on information obtained from the Defendant, he was informed that K.A. may have ingested drugs from a piece of paper or cigarette pack left there.

Investigator Rancer identified a Newport cigarette pack in the bedroom that contained a small amount of marijuana. Detectives also found fentanyl wrapped in packaging inside a jewelry case. The marijuana and fentanyl recovered from the scene were submitted to the Tennessee Bureau of Investigation for analysis and introduced at trial. Investigator Rancer was the final witness presented by the State. The Defendant did not present any proof at trial.

After the State rested its case, the defense orally moved for a judgment of acquittal pursuant to Rule 29 of the Tennessee Rules of Criminal Procedure. Defense Counsel argued:

> Your Honor, I believe, and I'm going off of the jury instruction, it's my understanding that the State is alleging that there was neglect upon the [D]efendant's part, and in that the State must prove beyond a reasonable doubt that there was an actual adverse effect to the child's health and welfare. I don't believe that they have proven that beyond a reasonable doubt. It could very well have been the Narcan that created a lot of the issues with the blood pressure and the pulse that they were talking about, so we would state that the State has not carried its burden of proof and ask for a directed verdict.

The trial court denied the motion.

Following the verdict, the Defendant filed a written motion for judgment of acquittal on April 19, 2024, reasserting that the evidence was insufficient to establish an adverse effect to the child's health and welfare. The Defendant argued that any physiological symptoms might have been side effects of Narcan administration. The trial court denied the motion and entered the judgment of conviction on April 22, 2024.

The Defendant subsequently filed a motion for new trial on May 24, 2024, arguing that the jury instructions regarding the phrase "adversely affected" were vague and undefined and asking the trial court to set aside the verdict and judgment based upon the insufficiency of evidence. The trial court denied this motion on June 10, 2024. The Defendant filed his notice of appeal on June 28, 2024.

## ANALYSIS

As an initial matter, we must address the timeliness of the Defendant's appeal. The Defendant argues that his written Motion for Judgment of Acquittal—denied on April 22, 2024—should be construed as a premature motion for a new trial thereby rendering his notice of appeal timely. The State counters that the motion for a new trial was untimely and urges this Court not to interpret the acquittal motion as a premature motion for new trial, emphasizing the substantive and procedural differences between the two motions. We agree with the State.

Tennessee Rule of Criminal Procedure 33(b) states, "A motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). The Tennessee Supreme Court emphasized the strict thirty-day deadline in this rule:

> [Rule 33(b)] is mandatory, and the time for the filing cannot be extended. Tenn. R. Crim. P. 45(b). A trial judge does not have jurisdiction to hear and determine the merits of a motion for a new trial that has not been timely filed. State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989); State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1981); Massey v. State, 592 S.W.2d 333, 334-35 (Tenn. Crim. App. 1979). The trial judge's erroneous consideration of ruling on a motion for new trial not timely filed, as in this case, does not validate the motion.

Dodson, 780 S.W.2d at 780.

Failure to file a written motion for new trial within the required thirty days not only results in the appellant losing the right to have a hearing on the motion, but it also deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial. Dodson, 780 S.W.2d at 780; Givhan, 616 S.W.2d at 613; Massey, 592 S.W.2d at 333.

In his reply brief, the Defendant urges this Court to treat the motion for judgment of acquittal as a motion for new trial because those issues were denied by the trial court "the final time on June 10, 2024, 18 days before [the Defendant] filed his notice of appeal." Based on this logic, the Defendant contends both the motion for new trial and the notice of

- 6 -

appeal would be timely.  The Defendant cannot have it both ways.  The Defendant advances two inconsistent positions:  (1) the written motion for judgment of acquittal denied on April 22, 2024, should be construed as a motion for new trial; and (2) the separate motion for new trial, filed on May 24, 2024, tolled the deadline for filing a notice of appeal, rendering the June 28, 2024 filing timely.  The Defendant cannot merge the motion for judgment of acquittal with the motion for new trial to produce his desired result.  The Defendant also relies on several cases from the Tennessee Supreme Court and this Court considering the defendant's issues in a prematurely filed motion when there is no prejudice to the State.  See State v. Hatcher, 310 S.W.3d 788, 800 (Tenn. 2010); State v. Siliski, 238 S.W.3d 338, 374 (Tenn. Crim. App. 2007).  These cases are easily distinguishable because the operative motion to convey appellate jurisdiction was clearly identified as a motion for new trial, the State did not object to the premature filing of the motion, and the only issue was the significance of the early filing of the motion.

In any case, for the following reasons, we decline to construe the Defendant's written motion for judgment of acquittal as a premature motion for new trial.  While courts are not bound by the title of a pleading and may interpret it based on the relief sought, Norton v. Everhart, the Defendant's written motion clearly and unequivocally sought a judgment of acquittal pursuant to Rule 29 of the Tennessee Rules of Criminal Procedure. 895 S.W.2d 317, 319 (Tenn. 1995).  A motion for judgment of acquittal under Rule 29 is fundamentally different than a motion for a new trial under Rule 33.  Rule 29 permits relief only where the evidence is legally insufficient to sustain a conviction, and if granted, results in the defendant's acquittal. Tenn. R. Crim. P. 29(b).  By contrast, a motion for new trial under Tennessee Rule of Criminal Procedure 33 allows for broad legal grounds and merely entitles the defendant to a new trial.  Tenn. R. Crim. P. 33(a).  Construing a motion for judgment of acquittal as a motion for new trial could blur these distinct standards, lead to procedural confusion, and undermine the integrity of the trial court's rulings. Given the distinct purposes, legal standards, and remedies between these two rules, we conclude that there is no legal basis to recharacterize the Defendant's written motion for judgment of acquittal as a motion for new trial.

The Defendant filed his motion for new trial on May 24, 2024, thirty-two days after entry of his judgments on April 22, 2024.  As a result, the motion for new trial is untimely. The motion for new trial therefore is a nullity and does not toll the thirty-day period for filing a notice of appeal. See Dodson, 780 S.W.2d at 780. Consequently, the Defendant has waived all issues for appellate review other than the sufficiency of the evidence and sentencing.  See Tenn. R. App. P. 3(e); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997).

A notice of appeal must be filed within thirty days of the judgment from which the appeal is taken or from the entry of an order denying a motion for new trial.  Tenn. R. App. P. 4(a), (c); see State v. Thompson, 285 S.W.3d 840, 852 (Tenn. 2009).  However, the

appellate court in a criminal case may waive the timely filing of a notice of appeal "in the interest of justice." Tenn. R. App. P. 4(a), (c). "'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (quoting State v. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." Id. (citing Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950 (Tenn. Crim. App. Feb. 13, 1996)).

As previously discussed, the judgment in this case was filed on April 22, 2024, and the Defendant filed his notice of appeal on June 28, 2024, sixty-seven days late. The interests of justice do not require waiver of the untimely notice of appeal to address the sufficiency of the evidence. We have considered the nature of the issues presented and conducted a thorough review of the record, both of which support dismissal. The Defendant waived his remaining issues by failing to file a timely motion for new trial. The Defendant failed to raise his constitutional vagueness challenge in any timely motion before the trial court, and the untimely motion for new trial did not preserve this issue. See State v. Rhoden, 739 S.W.2d 6, 10 (Tenn. Crim. App. 1987) (holding that the defendant waived review of his challenge that the state's child obscenity statute was constitutionally overbroad by raising it for the first time in a post-trial motion).

Moreover, we conclude that the Defendant's argument that the aggravated child neglect statute is unconstitutionally vague does not rise to the level of "plain error." See Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."); State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (establishing the five factors that should be considered by this court when determining whether an error is "plain error."). Additionally, the Defendant did not request plain error relief. Because the defendant bears the burden of showing an entitlement to plain error relief, a defendant's failure to request this relief necessarily weighs against any such consideration on our own. State v. Cornwell, No. E2011-00248-CCA-R3-CD, 2012 WL 5304149, at *18 (Tenn. Crim. App. Oct. 25, 2012).

Under these circumstances, we conclude the interest of justice does not mandate waiver of the Defendant's untimely filing of his notice of appeal. Accordingly, the appeal is dismissed.

## CONCLUSION

Based on the foregoing, the appeal is dismissed.

s/ Camille R. McMullen
CAMILLE R. MCMULLEN, JUDGE